IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   **Plaintiff,**

vs.             Criminal No. 11-CR-1524-JB

**IRA LEWIS LEWELLEN,**

   **Defendant.**

### DEFENDANT'S SENTENCING MEMORANDUM

   COMES NOW Defendant Ira Lewis Lewellen, by and through his undersigned counsel, and offers this Sentencing Memorandum in anticipation of his April 25, 2012 sentencing hearing.

   Mr. Lewellen would respectfully urge the Court to consider that in the particular circumstances of this case, without in any way minimizing the seriousness of the offense of conviction, imprisonment for the term contemplated by the advisory guideline range, or any term additional to the eleven (11) months already served, would be "greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

   Mr. Lewellen is just 25 years old and has no prior convictions. He respectfully submits that the purposes of sentencing set forth in 18 U.S.C. §3553(a) can be achieved by sentencing him to a split sentence, consisting of time served and either probation or supervised release, including a condition that he obtain appropriate treatment for his serious mental health issues.

1

### A. Comments on Pre-Sentence Report & Computing Guideline Sentencing Range

There is no dispute that Mr. Lewellen has neither adult criminal convictions nor juvenile adjudications. Therefore, under the advisory United States Sentencing Guidelines ("USSG") (2011), Mr. Lewellen has 0 criminal history points and falls within Criminal History Category I. Pre-Sentence Report (hereinafter "PSR") ¶¶ 26-28.

Mr. Lewellen does not dispute that the USSG provide for a base offense level of 22 for the offense of conviction, pursuant to §2.D.1.1(c)(9). *See* PSR, ¶18. Mr. Lewellen agrees with (and appreciates) the Probation Officer's conclusions that:

(i) he has satisfied the criteria for the "safety valve" and is therefore entitled to a two-level reduction, pursuant to 18 U.S.C. §3553(f), USSG §5C1.2 (1) – (5) and §2.D.1.1(b)(16), *see* PSR, ¶19;

(ii) he is a minor participant and is therefore entitled to a further two-level reduction, pursuant to USSG §3B1.2, *see* PSR, ¶21; and

(iii) having pled guilty to the Indictment and submitted a written statement incorporating by reference his factual admissions in the Plea Agreement at ¶8, he has "fully and unreservedly accept[ed] responsibility for this offense" and is entitled to a three-level reduction, pursuant to USSG §3E1.1., *see* PSR, ¶24, (First) Addendum to PSR submitted February 7, 2012, and attached Defendant's Statement of Acceptance of Responsibility.

Mr. Lewellen also appreciates that the Government has not objected to any of the above characteristics and adjustments identified by the Probation Officer.

In his statement of acceptance, Mr. Lewellen did not minimize the seriousness of his offense. Indeed, he recognized that his agreeing to carry this package for a friend of a

friend was "probably the most stupid decision of [his] life". Defendant's Statement of Acceptance of Responsibility, at 2 (page 2 of the attachments to (First) Addendum to PSR). The Court will note that Mr. Lewellen did not initially agree to carry the package but was pestered into doing so, and succumbed to the proposal to raise the money for the deposit for an apartment and to properly provide for Kamaree, the child he treats as his son. The Court will also note that Mr. Lewellen not only did not receive any payment for his role, but actually had to spend his own money for the bus trip from Oakland to the Los Angeles Amtrak Station.

Mr. Lewellen does not dispute that, under the USSG, the adjusted offense level of 15 and Criminal History category of I produces an advisory guideline imprisonment range of 18 to 24 months. PSR, ¶61. Mr. Lewellen appreciates that, prior to his psychological evaluation, the Government was prepared to stipulate to a sentence at the low end of the guideline range. Plea Agreement, at 6, ¶10.c..

Mr. Lewellen notes that, pursuant to statute, 18 U.S.C. §3561, he is eligible for probation for the offense, PSR, ¶65. However, the guidelines do not authorize probation because his advisory guideline imprisonment range falls within Zone D of the Sentencing Table. PSR, ¶67. Nevertheless, as appears more fully below, Mr. Lewellen respectfully submits that there are exceptional circumstances in his case which support an additional downward variance in his sentence, circumstances that are sufficiently compelling to warrant varying downward by at least four (4) levels to offense level 11. If the Court approves such a variance, under the USSG, the further adjusted offense level of 11 and Criminal History category of I produces an advisory guideline imprisonment range of 8 to 14 months. Under this computation, Mr. Lewellen has already served a median

sentence of 11 months.  The Court could therefore consider immediate *supervised* release.  Alternatively, after the variance, the advisory guideline imprisonment range falls into Zone B of the USSG Sentencing Table, such that the guidelines authorize probation.  The Court will note that, because Mr. Lewellen has satisfied the criteria for the safety valve, the term of probation or supervised release is not required to be a mandatory minimum of three (3) years, but can be between one (1) and three (3) years.  PSR ¶¶63-64.

### B.  Grounds under USSG for Variance from Guideline Sentencing Range

In the original PSR, the Probation Officer has already identified at least one basis for a variance, namely Aberrant Behavior, pursuant to USSG §5K2.20.  Further support for this conclusion can be found in the April 9, 2012 Psychological Report ("Report") of forensic psychologist Samuel Roll, Ph.D., as well as the nine (9) letters of reference submitted by both family members and others in the community, who know that this offense is wholly out of character for Mr. Lewellen.

Mr. Lewellen would respectfully submit that the Court might consider the following additional factors recognized by the USSG, which are also supported by the Report and the letters.

Mr. Lewellen is only aged 25, with no criminal experience and, as Dr. Roll discovered, "naïveté, and his natural sensitivity and vulnerability [which] put him at high risk for victimization by others."  Report, at 2 ¶5.  USSG §5H1.1 (Age).

Mr. Lewellen also suffers from mental and emotional conditions relevant to sentencing under USSG §5H1.3.  Dr. Roll diagnosed Mr. Lewellen as suffering from a

4

major depressive disorder, an anxiety disorder, and attention deficit disorder, none of which have received appropriate treatment to date. Report, at 1, ¶1, and 2 ¶4.

Mr. Lewellen also suffers from a physical condition relevant to sentencing under USSG §5H1.4., in that he has been experiencing elevated blood pressure at the young age of 25. PSR, ¶¶41-42.

Finally, USSG §5H1.6. may be relevant in this case since, as is apparent from the letters referenced above, Mr. Lewellen enjoys strong support from his family, and his relationship with them, offers powerful motivation to Mr. Lewellen to deal with his psychological problems.

### C.  Relevant Sentencing Factors under 18 U.S.C. § 3553(a)

Although the Court must consider the USSG, including the advisory guideline range, 18 U.S.C. §3553(a)(4) & (a)(5), following *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) and its progeny, the advisory guideline range is just one of several factors the Court must consider to arrive at a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). These include consideration of:

(1)   in addition to the nature and circumstances of the offense, the history and characteristics of Mr. Lewellen 18 U.S.C. § 3553(a)(1); and

(2)   the kinds of sentences available, 18 U.S.C. §3553(a)(3).

The Court is also required by 18 U.S.C. 3553(a) to consider what sentence will: "reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense", 18 U.S.C. 3553(a)(2)(A); "afford adequate deterrence to criminal conduct", 18 U.S.C. 3553(a)(2)(B); "protect the public from further crimes of

the defendant", 18 U.S.C. 3553(a)(2)(C), and "provide the defendant with needed … training, medical care, or other correctional treatment in the most effective manner", 18 U.S.C. 3553(a)(2)(D).

The sufficient-but-not-greater-than-necessary requirement, often referred to as the "parsimony provision", is not just another "factor" to be considered along with the others set forth in Section 3553(a), but sets an independent limit on the sentence a court may impose, to which all the enumerated factors are subservient.

Moreover, 18 U.S.C. §3661 mandates that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

> The [Sentencing] Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as *age*, education, *mental or emotional condition, medical condition …*, employment history, *lack of guidance as a youth, family ties*, or military, civil, charitable, or public service *are not ordinarily considered under the Guidelines*. See USSG. Manual §§ 5H1.1-6, 11, and 12 (Nov. 2006). These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. See, *e.g.,* 18 U.S.C. § 3553(a)(1)).
> *Rita v. U.S.*, ___ U.S. ___, 127 S.Ct. 2456, 2473 (2007) (Stevens, J. and Ginsburg, J., concurring). [emphasis added].

"[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a *rough approximation* of sentences that *might* achieve § 3553(a)'s objectives." *Id.*, at 2465 (majority opinion) (emphasis added). Thus, the Court may take into consideration that the guideline sentence should not apply "because the Guidelines sentence itself fails properly to reflect §3553(a) considerations..." *Id.*, at 2465. The Supreme Court's decisions mean that "the standards governing departures do not bind a district court when

6

employing its discretion with respect to variances." *U.S. v. Chase*, 560 F.3d 828 (8th Cir. 2009) (case remanded to consider defendant's characteristics which could warrant a downward variance under §3553(a)).

### D. Analysis of 18 U.S.C. § 3553(a) Sentencing Factors Applicable to Defendant

The history and characteristics of Mr. Lewellen are marked by:

1) a lack of any paternal guidance;
2) his mother's inability to accept his sexual orientation;
3) his internal conflict between his sincerely held religious convictions and his sexual orientation;
4) his lack of any or any significant criminal history and consequently his lack of any prior experience of incarceration; and
5) a psychological evaluation demonstrating that his psychological condition combines a major depressive disorder with an anxiety disorder, renders him susceptible to poor judgment and vulnerable to manipulation and victimization by others contributing not only to his out-of-character criminal behavior but also the exacerbation of his conditions while incarcerated, and yet also makes him receptive to treatment and rehabilitation.

Mr. Lewellen's father never married his mother Barbara and their relationship ended while Mr. Lewellen was just an infant. PSR, ¶31. Although he provided financial support, Mr. Lewellen's father has never been involved in Mr. Lewellen's life or provided any emotional support to him. Id.. *See also*, e.g., Letter of Larry D. Lewellyn Esq. dated December 22, 2011, at page 2 (2nd to last page of First Addendum to PSR). Indeed, it appears that it was only during his current incarceration that Mr. Lewellen's father told him that he loved him for the first time. Id..

In spite of an otherwise positive relationship, Mr. Lewellen obviously struggles with his mother's inability to accept his sexual orientation. PSR, ¶33.

As is apparent from the content of many of the letters of reference, Mr. Lewellen has clearly been a faithful churchgoer for most, if not all, of his life and has been

7

involved in many of his church's activities, including Sunday School, Children's Ministry, and the Youth Gospel Choir.

The undersigned has submitted to United States Probation the Report of Samuel Roll, Ph.D.. A copy has also been provided to counsel for the Government. Dr. Roll's current Vitae was previously submitted to the Court as Exhibit 2 to the *Ex Parte* Motion for his appointment. Dr. Roll's Report is based upon the results and data he obtained from interviews and a battery of psychological tests he conducted to evaluate Mr. Lewellen.

In summary, Dr. Roll found that Mr. Lewellen suffers from significant psychological difficulties, which he diagnoses as a major depressive disorder … exacerbated by the presence of a concomitant anxiety disorder." Report, at 1 ¶1. Dr. Roll also found that Mr. Lewellen is "a good candidate for rehabilitation and … [a] low risk for recidivism" because he does not suffer from any character disorder but manifests "a significant collection of *positive personality features* …." Report, at 3. [emphasis added]. Dr. Roll believes that "[w]ith *adequate therapy*, [Mr. Lewellen] has a moderately good prognosis for recovery or alleviation of his chronic mental deficits of depression, anxiety, and attention deficit disorder." Id.. [emphasis added].

Dr. Roll refutes that Mr. Lewellen's depression and anxiety is "simply the result of his current life circumstances", *i.e.* being in jail awaiting sentencing. Report, at 1 ¶1. Dr. Roll believes the depression derives from Mr. Lewellen's "abandonment by his father, his rejection by his mother [because of his sexual orientation], and his own struggles with his sexual identity and religious faith…." Id.. The chronic depression is

exacerbated by an anxiety disorder.  Id..  Both conditions are, in turn, exacerbated by, rather than the result of, his "incarceration and legal difficulties."  Id..

In the Report, Dr. Roll also found psychological factors that likely contributed to his involvement in the offense for which he is to be sentenced, which the Probation Officer had already noted as "aberrant behavior" warranting a variance at sentencing.  Several of those factors both explain Mr. Lewellen's submission to manipulation that led him into the offense conduct and also render incarceration more harmful to Mr. Lewellen than it might be to others less vulnerable.  Thus, Dr. Roll believes that Mr. Lewellen's "anxiety and inadequate social skills make him vulnerable to experiencing embarrassment and failure in social situations" so that he is "*at risk for ... poor judgment*."  Report, at 1-2 ¶2.  [emphasis added].  Mr. Lewellen "has a low self-concept", regarding other people as "more worthwhile than he is".  Id., at 2 ¶3.  Mr. Lewellen had attention deficit disorder as a child, which went untreated, leaving him as an adult with "limited capacities for attention, concentration, and integration of information."  Id., at 2 ¶4.  Mr. Lewellen's sexual orientation "combine[d] with his low self-concept, naïveté, and his natural sensitivity and vulnerability … put him at *high risk for victimization by others*."  Id., at 2 ¶5.  [emphasis added].

In spite of the unsatisfactory family history, Mr. Lewellen has previously avoided criminal behavior.  Having never previously experienced incarceration, Dr. Roll believes that Mr. Lewellen has already received the full extent of any deterrent or beneficial effect incarceration might work upon him.[1]

---

[1] In an April 13, 2012 telephone conference with undersigned counsel, Dr. Roll indicated that he was going to supplement his Report with respect to the effect upon Mr. Lewellen of his incarceration and the medications he is currently receiving as well as with respect to appropriate treatment(s).  Undersigned counsel has incorporated the substance of Dr. Roll's observations in this Memorandum.  Undersigned

9

Dr. Roll also found that Mr. Lewellen has a number of positive features to his personality.  Mr. Lewellen does not suffer from any psychological disorder that would predispose him to a pattern of impulsive acting out, that he does not have an impulse disorder, that he has neither a manic disorder nor a tendency to mania.  Report, at 2 ¶1. Mr. Lewellen does not have an anti-social personality or other character disorder that is predictive of a repetitive pattern of disregard of the rights and needs of others.  Report, at 2 ¶2.  The absence of these characteristics, together with several positive personality traits, cause Dr. Roll to believe Mr. Lewellen is unlikely to reoffend and should respond well to appropriate treatment. Report, at 2-3 ¶¶3-6, and at 3.

In contrast, there is no evidence that Mr. Lewellen's mental difficulties would be helped or his psychological strengths protected or reinforced in a prison setting.  As stated above, Dr. Roll believes that any benefit that might be derived from the shock of incarceration already occurred many months ago.  He also believes that the treatment of Mr. Lewellen with just medication is helpful only to the extent of preventing further deterioration to the level of crisis in Mr. Lewellen's mental condition.  In light of his fragile psychological condition, incarceration has actually had a damaging effect, exacerbating his pre-existing depression and anxiety, and resulting in accompanying physical disorders and symptoms.  Without appropriate treatment, it seems likely that Mr. Lewellen's mental difficulties would be further exacerbated by a further period of incarceration.  Dr. Roll is convinced that the most appropriate treatment is psychotherapy, particularly in light of the past experience of Mr. Lewellen receiving no treatment for ADD because it required medication.

---

counsel has left voicemail reminding Dr. Roll of his undertaking to provide this supplemental report and will forward it as soon as it is received.

Dr. Roll believes that, if Mr. Lewellen obtains treatment by adequate psychotherapy, Mr. Lewellen has a good prognosis for recovery, which in combination with his psychological strengths renders it even more unlikely that Mr. Lewellen would repeat this kind of behavior in the future.  Report, at 2-3 ¶¶3-6, and at 3.

From the foregoing, Mr. Lewellen would respectfully submit that further incarceration, either within or below the guideline range or at all, is not required to "afford adequate deterrence to criminal conduct" by him as required 18 U.S.C. 3553(a)(2)(B).  Mr. Lewellen would also respectfully submit that his incarceration would have little deterrent effect on others.  *See* e.g., *U.S. v. Swift*, 2008 WL 2906884 (N.D.Ind. July 28, 2008) (court varied 10 months from guideline range to impose mandatory minimum, citing, among other things, Defendant's acceptance of responsibility, lack of youthful guidance, and additional 10 months would serve no retributive purpose to defendant, nor make any large difference in deterrence of others).

Mr. Lewellen would also respectfully submit that, since the evidence from his prior record and the psychological evaluation shows he is unlikely to commit further offenses,   incarceration is not required to "protect the public from further crimes of the defendant", 18 U.S.C. 3553(a)(2)(C).  *See* e.g., *U.S. v. Ross*, 557 F.3d 237 (5th Cir. 2009)(appellate court reversed district court increase of below-guideline sentence originally imposed, finding original sentence reasonable based on, among other things, defendant's lack of criminal history, strong family support and youth as mitigating factors, and a psychiatrist's evaluation defendant posed low likelihood of recidivism); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008)(upholding non-guideline sentence of probation and a fine for defendant where guideline range was 10-16 months,

11

because, among other things, defendant had accepted responsibility, was a minimal risk of recidivism, and had already suffered substantially).

Mr. Lewellen would also respectfully submit that incarceration would not "provide the defendant with needed … training, medical care, or other correctional treatment in the most effective manner", 18 U.S.C. 3553(a)(2)(D).  In fact, Mr. Lewellen would also respectfully submit that further incarceration would delay his receiving needed treatment in the most effective and timely manner

### E.  Incarceration within or below Guideline Range Greater than Necessary for 18 U.S.C. 3553(a) Purposes

Thus, the final consideration required by 18 U.S.C. 3553(a) is what sentence will "reflect the seriousness of the offense, … promote respect for the law, and … provide just punishment for the offense", 18 U.S.C. 3553(a)(2)(A).  Incarceration is often an obvious answer to this consideration.  Mr. Lewellen does not minimize the seriousness of the offense and the need to continue the interdiction of drugs being transported by couriers or "mules" into the heartland.  However, the conjunctive language of the statute requires that the Court also consider what would be "*just* punishment" in all the circumstances.

The guideline range sentence is greater than necessary to satisfy the purposes of sentencing, and a variance is appropriate because, if Mr. Lewellen is imprisoned for any further substantial period, it will likely be counter-productive.  Mr. Lewellen would be unlikely to receive appropriate treatment for the mental health conditions from which he suffers, while continued confinement will further exacerbate those conditions.  Mr. Lewellen would be isolated from his family which has shown a commitment to support Mr. Lewellen through his legal and drug difficulties.  Even the father that abandoned and then ignored him may be at last making an effort to engage in his son's life.

Mr. Lewellen has never previously been confined for any period. *U.S. v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for defendant who had never been confined, was sufficient to impress on him seriousness of crime and deter him from re-offending); *U.S. v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

Although the advisory guidelines do not authorize a sentence of probation, PSR¶63, Mr. Lewellen is nevertheless eligible under 18 U.S.C. §3561 for probation for the offense of conviction. PSR¶65. Therefore, that sentence is "available" under 18 U.S.C. §3553(a)(3). Alternatively, since Mr. Lewellen has already served a significant, and he would submit sufficient, period of incarceration, this may be an appropriate moment to conclude the punitive portion of his sentence and commence his treatement and rehabilitation as part of his supervised release. Thus, Mr. Lewellen could receive "just punishment for the offense" and receive "training, medical care [and] correctional treatment", but still be able to have a relationship with his supportive family.

## Conclusion

For the reasons set forth herein, Defendant respectfully submits that the guideline range sentence is greater than necessary to satisfy the purposes of sentencing in 18 U.S.C. §3553(a). Indeed, Defendant respectfully submits that any sentence of imprisonment is greater than necessary to satisfy those purposes, which may be met by a sentence that does not require any further incarceration.

Respectfully submitted,

ALLISON & FISHER

*/s/ Charles Fisher*
Charles Fisher
300 Central Ave., SW, Suite 2200E
Albuquerque, New Mexico 87102
(505) 247-4099
Fax (505) 242-4055

*Attorney for Defendant*

## Certificate of Service

I hereby certify that the foregoing pleading and Exhibits were filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused the following parties or counsel to be served by electronic transmission, as more fully reflected by the Notice of Electronic Filing:

William Pflugrath
Assistant United States Attorney
P.O. Box 607
Albuquerque, New Mexico, 87103

And

Charlotte C de Baca, United States Probation & PreTrial Office
Charlotte_CdeBaca@nmcourt.fed.us

this 20th day of April, 2012.

*/s/ Charles Fisher*
Charles Fisher