**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            No. CR 11-1524 JB

IRA LEWIS LEWELLEN,

      Defendant.

<u>**UNSEALED MEMORANDUM OPINION AND ORDER**</u>[1]

    **THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed April 20, 2012 (Doc. 69)("Sentencing Memorandum"). The Court held a hearing on April 25, 2012. The primary issues are (i) whether the Court should grant a downward departure under U.S.S.G. § 5K2.20 based on aberrant behavior; and (ii) whether the Court should vary downward on Defendant Ira Lewis Lewellen's sentence and sentence him below the advisory guideline range. Because of Lewellen's lack of criminal history as well as the isolated and unsophisticated nature of the underlying criminal activity, the Court concludes that a downward departure of 2-offense levels is appropriate for Lewellen under U.S.S.G. § 5K2.20. Given that the low end of the applicable guideline range after a departure is 12 months, that Lewellen has served over 11 months, and the mitigating factors presented, the Court concludes that a sentence of 339-days imprisonment or time served, whichever is less, is appropriate in this case.

---

[1] In its Sealed Memorandum Opinion and Order, filed May 15, 2012 (Doc. 71)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. <u>See</u> Sealed MOO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. <u>See</u> Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

## FACTUAL BACKGROUND

Lewellen's parents "never married and they separated when he was an infant." Presentence Investigation Report ¶ 31, at 7, disclosed February 1, 2012 ("PSR"). Lewellen and his father "never shared a father and son relationship." PSR ¶ 31, at 7. Lewellen has tried to pursue a relationship with his father, but has been unsuccessful in doing so. See PSR ¶ 31, at 7-8. Lewellen related that "he shares a close and positive relationship with his mother, but when he told her that he was homosexual, she did not agree with his sexual preference." PSR ¶ 33, at 8. Lewellen "advised their relationship remains close, but they have both agreed not to discuss his sexual orientation." PSR ¶ 33, at 8. Ramona Dottery, an acquaintance of Lewellen, relates that Lewellen has "aspired to sing on the worship team" at the church he attends. Letter from Ramona L. Dottery to the Court at 4 (dated February 6, 2012)(attached to First Addendum to the Presentence Report, disclosed February 7, 2012)("Feb. 6, 2012 Letter"). Dottery asserts that she "can firmly attest to Ira's good qualities of being an upstanding young man who has other's best interest at heart." Letter at 4. Lewellen's mother states that Lewellen "continues singing at different churches while attending" school. Letter from Barbara Lewellen to the Court at 5 (not dated)(attached to First Addendum to Presentence Report).

On May 22, 2011, United States Drug Enforcement Administration ("DEA") agents acquired information that Lewellen would be traveling by train, because they learned that another individual had made travel arrangements for Lewellen. See PSR ¶ 6, at 3. DEA agents made contact with Lewellen on the train once he arrived in Albuquerque, New Mexico. See PSR ¶ 7, at 3. Agents obtained consent from Lewellen to search his luggage and located "three different plastic bundles containing cocaine . . . which resulted in a gross weight of approximately 379.40 grams." PSR ¶¶ 10-11, at 4-5.

## PROCEDURAL BACKGROUND

Lewellen, pursuant to a Plea Agreement, filed December 2, 2011 (Doc. 51), pled guilty to the Indictment, filed June 7, 2011 (Doc. 10), charging him with a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), that being possession with intent to distribute cocaine. The Plea Agreement stipulates "that a sentence at the low end of the guideline range is appropriate in this case." Plea Agreement ¶ 10, at 6. The parties agree to a 3-level reduction on Lewellen's offense level "so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct." Plea Agreement ¶ 10, at 4-5. Lewellen "waives the right to appeal" his conviction, "and any sentence and fine within or below the applicable advisory guideline range as determined by the Court." Plea Agreement ¶ 13, at 7. He also agrees "to waive any collateral attack" on his convictions, "except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." Plea Agreement ¶ 13, at 7. The USPO notes that "[a] downward departure, pursuant to U.S.S.G. § 5K2.20" for aberrant behavior "may be warranted." PSR ¶ 79, at 17.

The United States Probation Office ("USPO") disclosed a PSR for Lewellen on February 1, 2012. In the PSR, the USPO calculates Lewellen's total offense level to be 15. See PSR ¶ 25, at 6. The PSR applies a base offense level of 22 pursuant to U.S.S.G. § 2D1.1(c)(9) based on Lewellen having "at least 300 grams but less than 400 grams of cocaine." PSR ¶ 18, at 6. The PSR includes a 2-level downward adjustment under U.S.S.G. § 2D1.1(b)(16) for a safety-valve reduction. See PSR ¶ 19, at 6. The PSR includes a 2-level downward adjustment under U.S.S.G. § 3B1.2 based on the minor role Lewellen played in the underlying criminal activity. See PSR ¶ 21, at 6. The PSR includes a 3-level reduction under U.S.S.G. § 3E1.1 based on Lewellen's acceptance of responsibility. See PSR ¶ 24, at 6. The PSR lists his criminal history category as I, based on 0 criminal history points. See PSR ¶ 28, at 7. The PSR calculates that an offense level of 15 and a

-3-

criminal history category of I results in a guideline imprisonment range of 18 to 24 months.  See PSR ¶ 61, at 14.  The USPO relates that a departure may be warranted under U.S.S.G. § 5K2.20. See PSR ¶ 79, at 17.  The USPO asserts that a departure may be warranted under this guideline, because another individual arranged the trip for Lewellen, Lewellen appears to have never transported drugs before this incident, and Lewellen otherwise appears to have "lived a law-abiding lifestyle."  PSR ¶ 79, at 17.

On February 7, 2012, the USPO disclosed an Addendum to the Presentence Report to provide Lewellen's written statement regarding acceptance of responsibility.  Lewellen relates in his written acceptance of responsibility that a "friend of a friend offered to pay" him "$900 to ride on the train from L.A. to Alliance, Ohio, carrying a package containing drugs."  Defendant's Statement of Acceptance of Responsibility at 1 (attached to the Addendum to PSR).  He states that he needed money to move out of the area where he was living.  See Defendant's Statement of Acceptance of Responsibility at 1.  He notes that the "friend of a friend . . . said he would pay for the train ticket and for a flight back to L.A. from Ohio."  Defendant's Statement of Acceptance of Responsibility at 1.  He asserts that he "didn't agree straight away," but that the individual "pestered" him.  Defendant's Statement of Acceptance of Responsibility at 2.  He relates that he "got to thinking that this would help me pay the deposit for the apartment" to which he intended to move "and also provide for [his] son."  Defendant's Statement of Acceptance of Responsibility at 2.  He notes that he "couldn't see any other way to raise the money."  Defendant's Statement of Acceptance of Responsibility at 2.

Dr. Samuel Roll conducted a psychological evaluation of Lewellen on March 28, 2012.  See Psychological Report at 1 (dated April 9, 2012)(attached to Third Addendum to Presentence Report, disclosed April 23, 2012).  Dr. Roll "reviewed Mr. Lewellen's presentence investigation report,

-4-

indictment, and plea agreement." Psychological Report at 1. Dr. Roll also "reviewed letters on his behalf by a cousin, his brother, and his mother." Psychological Report at 1. Dr. Roll concludes that "Lewellen is suffering from a major depressive disorder" that is "chronic" and "not simply the result of his current life circumstances." Psychological Report at 1. Dr. Roll cites as contributing factors to Lewellen's situation: (i) "abandonment by his father"; (ii) "his rejection by his mother when she learned of his homosexuality"; and (iii) "his own struggles with his sexual identity and religious faith." Psychological Report at 1. Dr. Roll states that Lewellen's "depression is exacerbated by the presence of a concomitant anxiety disorder." Psychological Report at 1. Dr. Roll comments that Lewellen "has a low self-concept and tends to compare himself unfavorably to other people." Psychological Report at 2. Dr. Roll asserts that "[t]here is no indication in any of the psychological evidence that indicates the presence of a psychological disorder that would predispose Mr. Lewellen to a pattern of impulsive acting out." Psychological Report at 2. Dr. Roll represents that "[t]he absence of a character disorder and the presence of a significant collection of positive personality features, make Mr. Lewellen a good candidate for rehabilitation and put him at a low risk for recidivism." Psychological Report at 3. Dr. Roll states that "Lewellen has the adaptive capacity to anticipate and establish close, intimate, and mutually supportive relationships with other persons." Psychological Report at 3. Dr. Roll asserts that "Lewellen's psychological testing also indicates the absence of an anti-social personality or other character disorder that would be predictive of a repetitive pattern of disregard of the rights and needs of others." Psychological Report at 2. On April 10, 2012, the USPO disclosed a Second Addendum to the Presentence Report to relate that the USPO was able to acquire some additional information on Lewellen's educational background.

Lewellen filed his Sentencing Memorandum on April 20, 2012. See Doc. 69. He asks the Court to vary downward to "a split sentence, consisting of time served and either probation or

supervised release." Sentencing Memorandum at 1.  He contends that there are sufficient mitigating circumstances "to warrant varying downward by at least four (4) levels to offense level 11." Sentencing Memorandum at 3.  He notes that he has "already served a median sentence of 11 months." Sentencing Memorandum at 3-4.  He asserts that the USPO "has already identified at least one basis for a variance, namely Aberrant Behavior, pursuant to USSG § 5K2.20."  Sentencing Memorandum at 4.  Lewellen relates that he has no criminal history.  See Sentencing Memorandum at 4.  He contends that the Court should consider in determining whether to vary downward that he has problems with severe depression, has the benefit of significant family ties, and had a lack of guidance as a youth.  See Sentencing Memorandum at 5-7.

On April 24, 2012, Plaintiff United States of America filed its Response to Sentencing Memorandum Filed April 20, 2012.  See Doc. 70 ("Response").  The United States asserts that it will leave to the Court's discretion whether to vary downward in light of Lewellen's mental and emotional problems.  See Response at 1, 3 ("In the end, however, Defendant's request comes down to seven months, and the United States leaves to this Court's discretion how those seven months would be best applied.").  The United States notes that the cocaine Lewellen transported "had a potential societal harm," and that Lewellen's "offense characteristics, acceptance of responsibility and offense role were already considered" in the calculation of his guideline range.  Response at 2.  The United States notes that "[t]here are factors that counsel for a downward variance, but those factors do not necessarily mitigate what" Lewellen "was doing."  Response at 2.  It also asserts that "his acceptance of responsibility came only upon the eve of trial."  Response at 2.

At the sentencing hearing on April 25, 2012, the Court noted that it had few concerns about the appropriateness of a minor role adjustment under U.S.S.G. § 3B1.2, and asked the parties to clarify whether there was any reason to believe Lewellen played a larger role than being a courier

in the underlying criminal activity.  See Transcript of Hearing at 3:11-16 (taken April 25, 2012)(Court)("Tr.").[2]  The United States asserted that it had no reason to believe that he played a larger role than being a courier.  See Transcript of Hearing at 3:17 (Pflugrath).  Lewellen directed the Court to statements he had made in his written acceptance of responsibility indicating that he had minimal involvement in drug trafficking.  See Tr. at 3:20-4:4 (Fisher).  The Court then applied the minor role adjustment.  See Tr. at 4:5-6 (Court).  The parties then agreed to the Court reducing Lewellen's offense level a third level for acceptance of responsibility.  See Tr. at 4:6-16 (Court, Pflugrath, Fisher).  The Court asked the parties for their position on a departure under U.S.S.G. § 5K2.20 for aberrant behavior.  See Tr. at 4:17-19 (Court).  The United States asserted that, while it had concerns about the dangerousness of the drugs Lewellen possessed, it did not oppose a departure on this basis.  See Tr. at 4:20-5:3 (Pflugrath).  The Court asked whether the United States would be opposed to a 2-level downward departure on that basis, and the United States represented that it would not oppose such a departure and would leave the issue to the Court's discretion.  See Tr. at 5:11-17 (Pflugrath).  The Court then departed downward 2 levels on Lewellen's offense level under U.S.S.G. § 5K2.20.  See Tr. at 5:18-6:15 (Court).  The United States then asserted that it did not oppose a sentence of time served given that Lewellen has already served 11-months imprisonment and that the low end of the guideline range, following the 2-level departure, would be 12 months.  See Tr. at 7:12-15 (Pflugrath).

## LAW REGARDING DEPARTURES FOR ABERRANT BEHAVIOR

The Guidelines "place essentially no limit on the number of potential factors that may warrant a departure."  Koon v. United States, 518 U.S. 81, 106 (1996).  See United States v.

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").  A departure is warranted if the case is "unusual enough for it to fall outside the heartland of cases in the Guideline."  Koon v. United States, 518 U.S. at 92.

> It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.  We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Koon v. United States, 518 U.S. at 113.

"U.S.S.G. § 5K2.20 (effective November 1, 2000) authorizes a departure for aberrant conduct."  United States v. Hernandez, No. 03-2451, 2008 WL 4820800, at *7 (D.N.M. June 30, 2008)(Browning, J.)(citing U.S.S.G. § 5K2.20).  U.S.S.G. § 5K2.20(b) provides: "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20(b).  U.S.S.G. § 5K2.20(c) recognizes that a "court may not depart downward pursuant to this policy statement if . . . . the instant offense of conviction is a serious drug trafficking crime."  U.S.S.G. § 5K2.20(c).  Application note 2 to U.S.S.G. § 5K2.20 states that a "'[s]erious drug trafficking offense' means any controlled substance offense under title 21, United States Code other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater."  U.S.S.G. § 5K2.20 cmt. n.2.

In United States v. Pena, 930 F.2d 1486 (10th Cir. 1991), the United States Court of Appeals for the Tenth Circuit upheld a departure for aberrant behavior.  See 930 F.2d at 1495-96.  The Tenth Circuit concluded that the trial court could exercise its discretion to depart downward in a case where there was no evidence that the defendant had been a regular participant in the ongoing criminal enterprise or had ever been convicted of any unrelated illegal acts.  See United States v. Pena, 930 F.2d at 1495-96.  See also United States v. Patillo, 817 F.Supp. 839, 845 (C.D. Cal. 1993)(stating that a departure was warranted where first-time offense, possession of 586 grams of crack, was "out of character" for the defendant, who had stable employment history; who, in a moment of "financial weakness" and "unusual temptation," committed the crime; and who demonstrated "tremendous remorse"); United States v. Baker, 804 F.Supp. 19, 21 (N.D. Cal. 1992)(explaining that, where the defendant pled guilty to possession of one kilogram of crack and where act was "single act of aberrant behavior," downward departure proper).  "The totality of the circumstances must be viewed to see whether the offense fits within [the defendant's] normal conduct or if it is a complete shock and out of character."  United States v. Tsosie, 14 F.3d 1438, 1441 (10th Cir. 1994), overruled in part by United States v. Benally, 215 F.3d 1068, 1074 (10th Cir. 2000).

In United States v. Tsosie, the Tenth Circuit discussed aberrant behavior as a ground for departure in a homicide case in which the district court departed downward to a level 9, relying partly on evidence of aberrational behavior and citing United States v. Pena.  See United States v. Tsosie, 14 F.3d at 1441-42.  The Tenth Circuit remanded the case to the district court, because the court had not adequately set out a factual basis for a departure, explaining that the Tenth Circuit would not "rationalize" the district court's ruling and that, along with the great discretion the district court has in sentencing, it also has the responsibility to support its departure by facts in the record:

> We will not rationalize a district court's departure from the Guidelines -- either the decision to depart or the degree of departure. [United States v. ]Jackson, 921 F.2d [985,] 990 [(10th Cir. 1990)]. "It is not our task to determine what a district court's explanation for a departure could be." Id. at 993. Once the court assumes the burden of the step of departure it must also bear the corresponding burden of ensuring the record contains sufficient information to determine how and why the sentencing court reached the degree of departure imposed. U[nited] S[tates] v. St. Julian, 922 F.2d 563 (10th Cir. 1990).

United States v. Tsosie, 14 F.3d at 1441, 1443 (footnote omitted). In United States v. Benally, the Tenth Circuit receded from its holdings in United States v. Tsosie and United States v. Pena to the extent that, in those cases, the Tenth Circuit "upheld downward departures for aberrant conduct based, in part, on the fact the defendant had not been engaged in any prior criminal activity." United States v. Benally, 215 F.3d at 1074. The Tenth Circuit then held that:

> [T]he factors supporting an aberrant behavior departure must involve something other than an act which is merely a first offense. Stated differently, the permissible factors in this context must illustrate some unique circumstance -- some element of abnormal or exceptional behavior -- beside the fact the defendant has never before committed the crime.

United States v. Benally, 215 F.3d at 1074. Moreover, the guidelines indicate that, even in the most difficult and justifiably sympathy-evoking area, courts should depart downward only in rare cases. See United States v. Archuleta, 128 F.3d 1446, 1450 (10th Cir. 1997).

In United States v. Jones, the Tenth Circuit reviewed a district court's downward departure on the bases of eleven factors, including collateral employment consequences, the aberrant nature of the offense conduct, community service, support in the community, voluntary disclosure of offense conduct, post-offense rehabilitation, and access to rehabilitative counseling at defendant's place of employment. See 158 F.3d at 496 n.4. In upholding the district court's decision to depart downwards, the Tenth Circuit gave great deference to the district court's factual findings, saying:

> In reviewing the district court's characterization of Mr. Jones' offense conduct as aberrant behavior under the abuse of discretion standard we must determine how

-10-

much deference is due.  The Supreme Court has indicated deference is owed to the "judicial actor better positioned than another to decide the issue in question." <u>Koon [v. United States]</u>, 518 U.S. at 99 . . . (quotation marks, omission, and citations omitted).  The Supreme Court has further indicated the district court has a "special competence" in making the fact-specific assessments necessary to determine whether a particular case is sufficiently unusual to warrant departure.  <u>Id.</u>  In such instances, deferential appellate review facilitates the district court's resolution of questions involving "multifarious, fleeting, special, narrow facts that utterly resist generalization."  <u>Id.</u> (quotation marks and citation omitted).

We are convinced the determination of whether an individual defendant's offense conduct is aberrational, like the decision to depart, requires consideration of unique factors not readily susceptible of useful generalization.  The district court is in the better position to determine whether the defendant's offense conduct is out of character for that individual.  Accordingly, the district court's resolution of this largely factual question is due substantial deference.  After reviewing the record here, we conclude the district court did not abuse its discretion when it found Mr. Jones' offense conduct to be aberrational in light of his personal history.

. . . .

In view of the district court's special competence in making the refined comparative factual assessments necessary to determine if a circumstance is unusual or if a characteristic is present to an exceptional degree, <u>see</u> <u>Koon [v. United States]</u>, 518 U.S. at 98-99 . . . , we are not inclined to substitute our judgment for that of the sentencing court.  The district court did not abuse its discretion when it found the circumstances of this case atypical.  The permissible departure factors available to the district court, in the aggregate, provided a proper basis for departure, and are supported adequately in the record.

<u>United States v. Jones</u>, 158 F.3d at 500, 505.

The Court has previously held that a single criminal incident that deviates from an otherwise law-abiding life is an insufficient basis, in itself, to grant a departure for aberrant behavior. <u>See United States v. Guerrero-Marquez</u>, No. 07-1050, 2007 WL 5685113, at *9 (D.N.M. Dec. 13, 2007)("Unfortunately, the Court sees too many people succumb to the temptation to secure easy cash for the task of moving large quantities of drugs.  There is nothing particularly unusual about Guerrero-Marquez' case."). "Additionally, this Court has determined that there is not necessarily a basis for finding aberrant behavior under U.S.S.G. § 5K2.20 where several repetitive or planned

acts are the underlying conduct of a single charge against a defendant." United States v. Hernandez, 2008 WL 4820800, at *9 (citing United States v. Myers, No. 03-1943, Memorandum Opinion and Order at 6-7, filed on March 5, 2004 (Doc. 21)(D.N.M.)(Browning, J.)).

## ANALYSIS

There being no disputes about the PSR's factual findings, the Court adopts them as its own. Because of Lewellen's lack of criminal history as well as the isolated and unsophisticated nature of the underlying criminal activity, the Court concludes that a downward departure of 2-offense levels is appropriate under U.S.S.G. § 5K2.20.  Given that the low end of the applicable guideline range after a departure is 12 months, that Lewellen has served over 11 months, and the mitigating factors presented in the case, the Court concludes that a sentence of 339-days imprisonment or time served, whichever is less, is appropriate in this case.

**I.     THE COURT WILL DEPART DOWNWARD 2 LEVELS UNDER U.S.S.G. § 5K2.20 GIVEN THE ISOLATED NATURE OF LEWELLEN'S OFFENSE.**

U.S.S.G. § 5K2.20(b) provides: "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life."  U.S.S.G. § 5K2.20(b). U.S.S.G. § 5K2.20(c) recognizes that a "court may not depart downward pursuant to this policy statement if . . . . the instant offense of conviction is a serious drug trafficking crime."  U.S.S.G. § 5K2.20(c).  Application note 2 to U.S.S.G. § 5K2.20 states that a "'[s]erious drug trafficking offense' means any controlled substance offense under title 21, United States Code other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater."  U.S.S.G. § 5K2.20 cmt. n.2.

-12-

The Court believes that the factors supporting a departure under this guideline are met. First, it does not appear that there was significant planning involved in Lewellen's criminal activity. There appears to be nothing sophisticated about the planning of the drug transportation that would lead the Court to believe that the operation was particularly well developed. Additionally, the amount of drugs, while significant, is less significant than the amount in many drug cases that appear before the Court. Lewellen had approximately 379.40 grams of cocaine in his possession. See PSR ¶¶ 10-11, at 4-5. The United States Department of Justice stated in 2002 that "[m]ost powder cocaine offenses involve between 500 grams and 150 kilograms of cocaine." U.S. Dep't of Justice, Federal Cocaine Offenses: An Analysis of Crack and Powder Penalties 19 (2002), available at http://www.usdoj.gov/olp/pdf/crack_powder2002.pdf.[3]

Second, there is no evidence suggesting that Lewellen has engaged in drug trafficking on any other occasion. Importantly, Lewellen's involvement in the underlying criminal activity appears to have been of limited duration, which leads the Court to believe that he is not likely to engage in drug trafficking in the future. See United States v. Hernandez, 2008 WL 4820800, at *9 ("Additionally, this Court has determined that there is not necessarily a basis for finding aberrant behavior under U.S.S.G. § 5K2.20 where several repetitive or planned acts are the underlying conduct of a single charge against a defendant.").

Third, not only does Lewellen have no criminal history, his personal characteristics suggest that he has no inclination towards engaging in criminal activity. Dr. Roll's Psychological Report indicates that Lewellen does not have personality characteristics that suggest he is a person likely to commit crimes or that he will commit more crimes in the future. Lewellen appears to have faced

---

[3]The Court has not located any more recent versions of this publication issued in 2002.

some pressure to engage in the crime based on his financial circumstances and continued requests to transport drugs from the person who arranged for his transport. While "[t]he Court has previously held that a single criminal incident that deviates from an otherwise law-abiding life is an insufficient basis, in itself, to grant a departure for aberrant behavior," United States v. Guerrero-Marquez, 2007 WL 5685113, at *9, the Court has no evidence before it to suggest that: (i) the criminal activity in which Lewellen engaged was sophisticated; (ii) that Lewellen is a sophisticated criminal defendant; or (iii) that he is otherwise predisposed to commit more crimes. He also has some traumatic events in his life having been largely abandoned by his father and in facing strains on his relationship with his mother when he revealed his homosexuality to her. Likewise, he has some significant mental problems -- specifically major depression -- as identified by Dr. Roll.

Lastly, this offense is not a serious drug trafficking offense that would preclude the application of U.S.S.G. § 5K2.20, because there is no mandatory minimum sentence of 5 years or greater for this offense. See 21 U.S.C. § 841(b)(1)(C) (providing that a person charged with possession of "a controlled substance in schedule I or II . . . shall be sentenced to a term of imprisonment of not more than 20 years"); U.S.S.G. § 5K2.20 cmt. n.2. Thus, the Court believes that a downward departure of 2 levels is appropriate, which yields a criminal offense level of 13.

## II.     THE COURT WILL VARY DOWNWARD ON LEWELLEN'S SENTENCE.

Following a downward departure of 2 levels, Lewellen has an offense level of 13. An offense level of 13 and a criminal history category of I yields a guideline imprisonment range of 12 to 18 months. There being no disputes about the PSR's guideline calculation, the Court will adopt that calculation as its own except to add a 2-level downward departure under U.S.S.G. § 5K2.20.

The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by

the applicable category of defendant.  The Court believes that the punishment that the guidelines set forth is not appropriate for Lewellen's offense.  The Court agrees with the parties that a sentence of 339-days imprisonment or time served, whichever is less, is sufficient to reflect the seriousness of this offense.  The evidence consistently indicates that this offense was Lewellen's first experience with drug trafficking.  He also has some significant mental problems, particularly severe depression.  He has no criminal history.  He was engaged in a relatively non-sophisticated drug trafficking crime.  He has already served over 11-months imprisonment.  While the Court does not minimize the gravity of his offense, the Court believes that additional incarceration would not properly reflect the factors in 18 U.S.C. § 3553(a).  The value of additional incarceration is limited given that Lewellen appears to be a good candidate for rehabilitation.[4]

Other conditions that the Court will require as part of supervised release will also provide Lewellen with some needed education, training, and care to prevent these problems from reoccurring.  This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).  While the offense is not a minor one, it is less substantial than many drug offenses that the Court sees.  Additionally, the level of complexity and sophistication of the underlying criminal activity makes the offense less serious -- as opposed to more sophisticated drug operations.  Lewellen now has a felony conviction and has served close to

---

[4]The Court notes that, if it had imposed a sentence of 12 months and 1 day, Lewellen would have received 54 days of good time credit.  "Federal sentencing law permits federal prison authorities to award prisoners credit against prison time as a reward for good behavior."  See Barber v. Thomas, 130 S.Ct. 2499, 2502 (2010)(citing 18 U.S.C. § 3624(b)).  Accounting for good time credit, Lewellen would have only needed to serve 312-days imprisonment.  Consequently, the Court could have arrived at a sentence of time served without varying downward on Lewellen's sentence.

the entirety of a guideline sentence.  He has, however, no criminal history.  Thus, the Court believes the sentence promotes respect for the law and provides just punishment.  Lewellen's lack of criminal history and the indications that he has little propensity to recidivate makes the Court believe that the sentence protects the public.  Given that Lewellen has served almost the entire amount of a guideline sentence, his lack of criminal history, and his significant mental problems, the Court does not believe the sentence promotes unwarranted sentencing disparities among similarly situated defendants.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court believes this sentence is reasonable.  And perhaps most important in this calculation, the Court believes that this sentence is sufficient without being greater than necessary to comply with the purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences Lewellen to 339-days imprisonment or time served, whichever is less.

**IT IS ORDERED** that the requests for a downward departure and for a variance contained in the Defendant's Sentencing Memorandum, filed April 20, 2012 (Doc. 69), are granted.  The Court will depart downward 2-offense levels on Defendant Ira Lewis Lewellen's offense level.  The Court varies from the resulting advisory guideline range and sentences Lewellen to 339-days imprisonment or time served, whichever is less.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
Louis E. Valencia
Bill Pflugrath
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Charles Nicholas Fisher
Allison & Fisher
Albuquerque, New Mexico

   *Attorneys for the Defendant*